**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| EVELYN LEWIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | Cause No. 6:06-CV-357 |
| | § | |
| LARRY PUGH, Former Police Officer, | § | |
| MARK JOHNSON, City of Jacksonville | § | |
| Police Chief, and | § | |
| CITY OF JACKSONVILLE, TEXAS, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS CITY OF JACKSONVILLE, TEXAS AND FORMER JACKSONVILLE POLICE CHIEF MARK JOHNSON'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment filed by Defendants City of Jacksonville, Texas and Former Jacksonville Police Chief Mark Johnson (Docket Entry No. 19). Having considered the moving Defendants' motion, the Plaintiff's response, the replies, and the applicable law, the Court is of the opinion that the Defendants' motion should be granted.

### BACKGROUND

This lawsuit originates from allegations that Defendant Larry Pugh sexually assaulted Plaintiff Evelyn Lewis in March of 2005, during a time when Defendant Pugh was a police officer for the City of Jacksonville, Texas.

Plaintiff Lewis alleges that Pugh offered her a ride while she was walking home from a friend's house early in the morning sometime in March 2005. Pugh was in uniform, was armed with a gun, and was driving a City of Jacksonville police car at the time. Lewis accepted the ride and Defendant Pugh took Lewis to an abandoned trailer house and raped her. Lewis indicates that she was afraid Pugh would shoot her if she resisted. Lewis states that she never had consensual sex with Pugh and did not want to have sex with him.

Plaintiff indicates that she called Jacksonville Police Detective Tonya Harris the next day but was unable to reach her. Lewis eventually spoke on the phone with Jacksonville Assistant Police Chief John Page and told him what had happened. Assistant Chief Page asked to speak with Lewis in person, but Lewis said she would rather talk to Detective Harris. Lewis states that she spoke with Detective Harris during the next day or two and told Detective Harris what Officer Pugh had done to her. According to Lewis's Declaration, Detective Harris "felt like the City of Jacksonville knew something bad about Pugh before he raped me." Harris further indicated that "they had a suspicion" and wanted Lewis to "wear a wire." Lewis does not indicate whether she ever did "wear a wire."

Sometime later, Lewis spoke with Joe Evans, an investigator for the Cherokee County District Attorney who was not affiliated with the City of Jacksonville, and told Investigator Evans what Pugh had done to her. About a month-and-a-half to two months later, in October 2005, Lewis gave Investigator Evans a written statement. Lewis also spoke with the FBI shortly after her visit with Evans.

On October 21, 2005, within a day or two of Lewis's written statement to Investigator Evans, Defendant Pugh was placed on suspension by Defendant former Police Chief Mark Johnson. Former Police Chief Johnson fired Pugh on February 8, 2006, after being notified that Pugh had been arrested on charges of sexual assault.

Lewis also alleges that Defendant Pugh assaulted her on August 9, 2006, after Pugh was no longer a police officer.

In her suit, Plaintiff Lewis brings claims against Defendant Pugh for deprivation of rights under color of law pursuant to 42 U.S.C. § 1983, and for state assault and battery claims arising from the August 9, 2006 incident. Plaintiff Lewis also asserts claims against the City of Jacksonville and former Police Chief Johnson (collectively "Defendants") under 42 U.S.C. § 1983 for their failure to supervise Officer Pugh, their deficient hiring and retention of Pugh, and their toleration of a custom of police misconduct.

Defendants City of Jacksonville and former Police Chief Johnson move for summary judgment on the grounds that there is no evidence to support a cause of action against the City of Jacksonville and former Police Chief Johnson for municipal or supervisory liability under 42 U.S.C. § 1983.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The moving party must show initially that there is no genuine issue concerning any material fact in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 256 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving party may also meet its summary judgment burden by pointing to the absence of evidence supporting any non-movant's claim. *Celotex Corp.*, 477 U.S. at 325.

Once the moving party has satisfied its burden, the party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials in its pleading, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The non-movant is required to identify evidence in the record and articulate the manner in which that evidence supports its claim. *Ragas*, 136 F.3d at 458. If the non-movant fails to set forth specific facts to support an essential element in that party's claim and on which that party will bear the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322–23.

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Merrit-Campbel, Inc.*, 164 F.3d at 961. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Irrelevant or unnecessary factual disputes should not be considered. *Id*.

## DISCUSSION

Plaintiff Lewis asserts § 1983 claims against both the City of Jacksonville and former Police Chief Johnson for failure to supervise officer Pugh, for their hiring and retention of officer Pugh, and for their toleration of Pugh's misconduct. Though not specifically alleged in her complaint, Plaintiff also argues in her response to Defendants' motion that the Defendants' had a deficient procedure for reporting police misconduct that was a cause of her injury. The Court will analyze all claims against Defendants City of Jacksonville and former Chief Johnson under theories of § 1983 municipal and supervisory liability.[1]

A municipality may not be held liable under § 1983 on the basis of the employee's conduct alone, as there is no *respondeat superior* or vicarious liability for municipalities

---

[1] In all respects but name, an official capacity suit is to be treated as a suit against the entity itself. *Turner v. Houma Municipal Fire and Police Civil Service Bd.*, 229 F.3d 478, 484 (5th Cir. 2000). The official capacity claims and the claims against the governmental entity essentially merge. *Id*. at 485.


under § 1983. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). A municipality may only be held liable when the execution of an official policy or custom of the municipality is the "moving force" of the plaintiff's constitutional injury. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 694 (1978); *Gros v. City of Grand Prarie*, 181 F.3d 613 (5th Cir. 1999). That is, a plaintiff must demonstrate that his or her injury was the result of the municipality's "deliberate conduct" and that there is a "direct causal link" between the municipal conduct and the deprivation of federal rights. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

In cases where a plaintiff's injury was not the result of an affirmatively adopted policy or custom, liability may be found where a plaintiff can show that his or her injury was a result of the municipality's failure to adopt a policy needed to prevent predictable violations of federal law. *See City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989) (discussing municipal liability for inadequate training programs); *Bryan County*, 520 U.S. at 404 (discussing municipal liability for deficient hiring practices); *Piotrowski*, 237 F.3d at 579–80 (discussing municipal liability for inadequate supervision). In such instances, the municipality's need to adopt additional or different policies is "'so obvious,' that failure to

do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10. Accordingly, claims that a municipality's failure to train, supervise, or otherwise properly adopt adequate hiring or retention policies and procedures must be based on a showing that the municipal policy maker's conduct evidences deliberate indifference to the plaintiff's constitutional rights. *See id.* (inadequate training governed by deliberate indifference); *Bryan County*, 520 U.S. 397 (deficient hiring practices governed by deliberate indifference); *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) (claims of inadequate supervision governed by deliberate indifference standard).

### 1. Failure to Supervise or Train

In cases centered on an alleged failure to supervise, the Fifth Circuit requires that the plaintiff prove that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). An individual supervisor's liability and the liability of a municipality are considered under the same standards of fault and causation. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). Accordingly, the Court will consider the evidence as to both the City of Jacksonville and former Police Chief Mark Johnson together.

In this case, the Court finds that the Plaintiff's evidence is insufficient to establish deliberate indifference. Deliberate indifference is a "stringent standard of fault requiring

proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998). To prove the required deliberate indifference on a claim for failure to train or supervise, a plaintiff ordinarily must demonstrate "a pattern of similar incidents in which the citizens were injured." *Davis*, 406 F.3d at 383 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir. 1998)). "[P]roof of a single violent incident ordinarily is insufficient." *Id*. (quoting *Snyder*, 142 F.3d at 798). A showing of deliberate indifference must also include proof that the municipality or supervisor's failure to train or act reflects a "deliberate" or "conscious" choice by the municipality to endanger constitutional rights. *Id*.; *see City of Canton*, 489 U.S. at 389. Therefore, to prove deliberate indifference, the Plaintiff must demonstrate a pattern of constitutional violations, and must also demonstrate that, in the face of this pattern, the inadequacy of the Defendants' training and supervision is "obvious" and is "obviously likely to result in a constitutional violation." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *City of Canton*, 489 U.S. at 390 n.10).

Plaintiff argues that several incidents involving Officer Pugh that occurred both before and after the alleged March 2005 sexual assault are sufficient to prove deliberate indifference on the part of the City and Chief Johnson. These incidents occurred from October 2004

through October 2005. The first incident involving Pugh occurred on October 22, 2004 at the "Tomato Bowl," a football stadium in Jacksonville. On that occasion, Jacksonville police officers including Officer Pugh allegedly used excessive force when arresting several individuals during an incident following a high school football game. Following this incident, several of the alleged victims attended a community meeting that was attended by Police Chief Johnson and voiced complaints that Jacksonville police officers had used excessive force during arrests at the Tomato Bowl incident. Several victims of that incident also attended a Jacksonville City Council meeting where they voiced similar complaints. There were no allegations of sexual misconduct related to the October 22, 2004 Tomato Bowl incident.

In the second incident, Officer Pugh allegedly used excessive force and made an unlawful arrest of an individual following a traffic stop in October 2005. This event occurred approximately six months after the Plaintiff alleges she was raped, and no allegation of sexual misconduct was made in relation to the October 2005 incident.

In addition to these two allegations of excessive force, there is evidence that Officer Pugh may have engaged in other instances of sexual misconduct with other individuals while on duty. There is no evidence, however, as to *when* these other events occurred. More importantly, however, the Plaintiff's evidence indicates that the City of Jacksonville and former Police Chief Johnson were not made aware of any incidents of sexual misconduct

involving Pugh until June of 2005, at least two months after Pugh is alleged to have raped Plaintiff.

Plaintiff also produces evidence that the City of Jacksonville hired a consultant in the spring or summer of 2005 to assess the Jacksonville police department and recommend changes or improvements. After the consultant had completed his review, the consultant recommended to the City Council that the police department implement several procedural reforms, including use of accountability programs, dated log sheets, and additional management and training programs for all members of the department. There is no evidence that the consultant knew of or made recommendations based on any knowledge of alleged sexual misconduct by City of Jacksonville police officers during his 2005 assessment. The consultant reviewed the Jacksonville police department again in April 2006 and recommended at that time that the City fire or demote Chief Johnson. Chief Johnson was suspended prior to his retirement in 2006. Chief Johnson was told he was suspended because of his failure to properly supervise the police department.

Based on the foregoing, the Court concludes that there is no genuine issue of material fact as to Plaintiff's claim that the Defendants' were deliberately indifferent in their training or supervision of Officer Pugh. Plaintiff has produced no evidence that demonstrates a pattern of similar sexual offenses by Pugh prior to March of 2005 that would support a finding that the Defendants deliberately ignored a risk that Pugh might engage in sexual misconduct while on duty. The evidence indicates that Plaintiff's March 2005 complaint of

sexual misconduct was the *first* complaint of its type received by the police department. Though citizens had made prior allegations of *excessive force*, a municipality or supervisor must have notice of a pattern of *similar* violations and the officer's prior conduct must actually "point to the specific violation in question." *Davis*, 406 F.3d at 383.

For example, the Fifth Circuit has held that a habit of *displaying a firearm* during traffic stops does not constitute a relevant pattern with respect to *using deadly force* during a traffic stop. *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005). Likewise in *Gross v. City of Grand Prarie*, the Fifth Circuit concluded that it was not plainly obvious that an officer whose prior record included evidence that he was too aggressive, overbearing, and abusive during traffic stops would later sexually assault motorists during traffic stops. 209 F.3d 431, 436 (5th Cir. 1999). In this case, there is no evidence that Pugh previously engaged in any conduct that is sufficiently similar to sexual assault or rape prior to March 2005, much less that the Defendants could have been aware prior to that date of a propensity on the part of Pugh to engage in such conduct.

Plaintiff argues, however, that there is a "single incident exception" where a pattern of violations is not necessary to demonstrate deliberate indifference on the part of the Defendants. This exception, however, is limited to those instances where the "highly predicable" consequence of a failure to train or supervise would result in the specific injury suffered. *Bryan County*, 520 U.S. at 409; *Davis*, 406 F.3d . The key element, however, is a high degree of predictability. *Id*. at 409–10. In this case, however, it is not highly

predictable that a failure to train an officer regarding the inappropriateness of criminal sexual conduct will result in such conduct.  Indeed, it hardly seems necessary that an officer would require specific training to know that rape, sexual assault, and other blatantly criminal actions are inappropriate.  Accordingly, the single-incident exception does not apply to this case.

For these reasons, the Court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether the Defendants were deliberately indifferent in their training or supervision of Pugh.

### 2. Deficient Hiring or Retention

The Plaintiff also argues that the hiring and retention of Pugh amounts to deliberate indifference on the part of the Defendants.  Plaintiff cites no evidence, however, to establish that, prior to being hired by the City of Jacksonville, a review of Officer Pugh's record would have revealed that Officer Pugh was "highly likely to inflict the particular injury suffered by the plaintiff."  Plaintiff does indicate that Officer Pugh was the subject of a § 1983 lawsuit prior to being hired by the City of Jacksonville, but Plaintiff does not indicate the outcome of the suit or state any specifics that would indicate that Officer Pugh was highly likely to commit the constitutional offense alleged in this case.  There is no evidence that the "plainly obvious consequence of the hiring decision" was that Pugh would rape or sexually assault a citizen.  *See Bryan County*, 520 U.S. at 412.

As to negligent retention, it has already been noted that there is no evidence from Pugh's conduct prior to March of 2005 that Pugh was highly likely to commit the alleged

constitutional wrong, and thus no evidence that the Defendants consciously disregarded a known risk that Pugh would engage in illegal sexual misconduct.

Accordingly, Plaintiff has failed to establish a genuine issue of material fact as to whether the Defendants were deliberately indifferent in their hiring or retention of Pugh.

### 3. Deficient Procedures Involving the Discovery of Police Misconduct

Plaintiff also argues that the City of Jacksonville's deficient administrative procedures for the discovery of police misconduct constitutes deliberate indifference. Specifically, Plaintiff produces evidence that the City of Jacksonville did not have a formal complaint procedure or a procedure for logging or keeping records of verbal complaints of police misconduct.[2]

Plaintiff Lewis specifically argues that this case is similar to *Brandon v. Holt*. 469 U.S. 464 (1985). In *Brandon*, the plaintiffs proved before the district court that the defendant police officer had a history of violent and irregular behavior that was well known within the police department. *Id*. at 466. The district court found that, though the director of police had

---

[2] Though the Fifth Circuit has not expressly recognized a claim where a municipality's deficient complaint-logging procedure amounted to deliberate indifference, the Court assumes for the purposes of this order that such a claim, which has been recognized in other circuits, is valid. *See, e.g., Thomas v. Roberts*, 261 F.3d 1160, 1176 (11th Cir. 2001) (holding that evidence that law enforcement agency routinely failed to log citizens' complaints may be evidence of deliberate indifference to the constitutional rights of citizens), *adhered to*, 323 F.3d 950 (2003); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (holding that the mere existence of previous citizens' complaints does not show a municipal custom of permitting or encouraging excessive force); *Fiacco v. City or Rensselaer*, 783 F.2d 319 (2nd Cir. 1986) (finding city's failure to implement procedures for making complaints of police officer misconduct could constitute municipal policy of deliberate indifference to use of excessive force by officers), *cert. denied*, 480 U.S. 922 (1987).

no actual knowledge of the officer's prior behavior, the director *should* have known of the officer's dangerous propensities, and the director's lack of knowledge was found to have been caused by "the inherently deficient nature of police administrative procedures involving the discovery of officer misconduct." *Id*. at 467. Plaintiff argues that the instant case is like *Brandon*, in that the City of Jacksonville's failure to adopt administrative procedures for discovering officer misconduct amounts to deliberate indifference to the rights of its citizens.[3]

Assuming for the sake of argument that Plaintiff can prove that the City of Jacksonville was deliberately indifferent in its failure to adopt administrative procedures for discovering officer misconduct, Plaintiff nevertheless fails to establish the necessary "direct causal link" between the municipal policy and the constitutional deprivation. Municipal liability may only be imposed when the enforcement of a policy or custom was the "moving force" behind the violation of federally protected rights. *Monell*, 436 U.S. at 694; *Piotrowski*, 237 F.3d at 580. Unlike *Brandon*, Ms. Lewis fails to establish that Pugh had a history of sexual abuse or similar conduct that *could* or *should* have been discovered through a more adequate complaint-reporting procedure. Therefore, there is no genuine issue of

---

[3] In *Brandon*, the sole issue on appeal was whether a damages judgment should be paid by the municipality when damages were levied against an individual in his official capacity. 469 U.S. at 465. In *Brandon*, the Supreme Court did *not* consider the propriety of the law as applied by the district court, nor did it consider sufficiency of the evidence for the underlying § 1983 claim. *See id*.

material fact as to whether any deficient procedure for logging or reporting police misconduct was the "moving force" of the plaintiff's injuries.

## CONCLUSION

Plaintiff fails to produce evidence that establishes a genuine issue of material fact as to whether the Defendants acted with deliberate indifference in the supervision, training, hiring, and retention of Pugh.  Plaintiff also fails to produce evidence that any deficient administrative procedure for reporting complaints of police misconduct was the moving force behind Plaintiff's injuries.  Accordingly, summary judgment should be, and hereby is, **GRANTED** as to the Plaintiff's claims against Defendants City of Jacksonville and former Police Chief Mark Johnson.  It is therefore

**ORDERED** that the Plaintiff's claims against the City of Jacksonville and former Police Chief Mark Johnson are hereby **DISMISSED**.

**It is SO ORDERED.**

**SIGNED this 11st day of May, 2007.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE